DENNIS J. HERRERA, State Bar #139669
City Attorney
JESSE C. SMITH, State Bar #122517
Chief Assistant City Attorney
RONALD P. FLYNN, State Bar #184186
Chief Deputy City Attorney
YVONNE R. MERÉ, State Bar #173594
Chief of Complex and Affirmative Litigation
KENNETH M. WALCZAK, State Bar #247389
NATALIE M. ORR, State Bar #290590
Deputy City Attorneys
Fox Plaza
1390 Market Street, 6th Floor
San Francisco, California 94102-4602
Telephone:      (415) 554-4206
Facsimile:      (415) 554-4715
E-Mail:         kenneth.walczak@sfcityatty.org

Attorneys for Plaintiff
CITY AND COUNTY OF SAN FRANCISCO

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CITY AND COUNTY OF SAN FRANCISCO,<br><br>        Plaintiff,<br><br>    vs.<br><br>JEFFERSON B. SESSIONS III, Attorney General of the United States, UNITED STATES DEPARTMENT OF JUSTICE, DOES 1-100,<br><br>        Defendants. | Case No. 18-cv-2068-JST<br><br>**OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**<br><br>Judge:          Hon. Jon S. Tigar<br>Hearing Date: December 6, 2018<br>Time:           2:00 p.m.<br>Location:       Courtroom 9, 19th Floor |

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ........................................................................................... ii

INTRODUCTION ......................................................................................................... 1

LEGAL STANDARD.................................................................................................... 2

ARGUMENT ................................................................................................................. 3

I.     THE CITY HAS ARTICLE III STANDING TO CHALLENGE IMPROPER
       RESCISSION OF THE EIGHT DOJ DOCUMENTS........................................... 3

       A.     The City Can Sue to Redress a Procedural Injury Under the APA. ............ 3

       B.     The City Has a Reliance Interest In Both the Rescinded Guidance and
              Compliance with the APA. ....................................................................... 5

       C.     The City Has a Constitutional Interest In Preserving Its Ability to Make
              and Enforce Laws. .................................................................................... 5

       D.     The City Can Sue to Redress Harm to Its Proprietary Interests. ............... 7

              1.     Improper Rescission Harms the City Economically........................ 7

              2.     Improper Rescission Creates a Significant Risk of Enforcement
                     Actions Against the City................................................................ 9

              3.     Improper Rescission Frustrates the City's Core Missions............. 11

       E.     The City's Injuries Are Fairly Traceable to Improper Rescission ............ 12

       F.     A Favorable Judicial Decision Would Redress the Injuries. ..................... 14

II.    THE DEPARTMENT'S RIPENESS ARGUMENTS FAIL. ............................... 16

       A.     Prudential Ripeness is a Disfavored Doctrine of Questionable Validity... 16

       B.     The City's APA Claim Is Ripe for Judicial Review. ................................ 16

              1.     The Issues in the FAC Are Fit for Judicial Decision. .................... 17

              2.     The "Hardship" Inquiry Does Not Tip the Balance....................... 18

       C.     Final Agency Actions are Presumptively Reviewable Under the APA..... 19

III.   THE DEPARTMENT'S FINALITY ARGUMENTS AS TO THREE
       DOCUMENTS FAIL........................................................................................ 20

       A.     Rescission of the Initial Guidance Documents Was  Neither Tentative
              Nor Interlocutory. ................................................................................. 20

       B.     Rescinding the Initial Guidance Documents Has Practical Legal
              Consequences......................................................................................... 22

CONCLUSION............................................................................................................ 23

APPENDIX A............................................................................................................... 24

# **TABLE OF AUTHORITIES**

**Cases**

*Abbott Laboratories v. Gardner*
    387 U.S. 136 (1967)...............................................................................16, 17, 19, 20

*Adam Bros. Farming, Inc. v. Cty. of Santa Barbara*
    604 F.3d 1142 (9th Cir. 2010) ...................................................................................17

*Alaska Right to Life Political Action Comm. v. Feldman*
    504 F.3d 840 (9th Cir. 2007) .......................................................................................9

*Allen v. Wright*
    468 U.S. 737 (1984)....................................................................................................12

*Babbitt v. Farm Workers*
    442 U.S. 289 (1979).......................................................................................................9

*Barrick Goldstrike Mines, Inc. v. Browner*
    215 F.3d 45 (D.C. Cir. 2000).......................................................................................22

*Bennett v. Spear*
    520 U.S. 154 (1997)...............................................................................................20, 22

*Black v. Payne*
    591 F.2d 83 (9th Cir. 1979), *cert. denied*, 444 U.S. 867 (1979)................................2

*Bowman Transp., Inc. v. Arkansas–Best Freight Sys., Inc.*
    419 U.S. 281 (1974).......................................................................................................5

*Califano v. Sanders*
    430 U.S. 99 (1977).......................................................................................................16

*Cement Kiln Recycling Coal. v. E.P.A.*
    493 F.3d 207 (D.C. Cir. 2007).....................................................................................18

*Chrysler Corp. v. Brown*
    441 U.S. 281 (1979).......................................................................................................4

*Citizens for Better Forestry v. U.S. Dep't of Agric.*
    341 F.3d 961 (9th Cir. 2003) .......................................................................................17

*City & Cty. of San Francisco v. Trump*
    No. 17-16886, 2018 WL 1401847 (9th Cir. Jan. 4, 2018)............................................6

*City of Los Angeles v. Bank of Am. Corp.*
    No. CV 13-9046 PA (AGRx), 2014 WL 2770083 (C.D. Cal. June 12, 2014) .......................3, 8

*City of Oakland v. Lynch*
    798 F.3d 1159 (2015)....................................................................................................8

*City of Oakland v. Wells Fargo Bank, N.A.*
    No. 15-CV-04321-EMC, 2018 WL 3008538 (N.D. Cal. June 15, 2018)................................11

*City of Sausalito v. O'Neill*
    386 F.3d 1186 (9th Cir. 2004) ........................................................7, 8, 15

*Colwell v. Dep't of Health & Human Servs.*
    558 F.3d 1112 (9th Cir. 2009) ................................................17, 18

*Continental Air Lines, Inc. v. C. A. B.,*
    522 F.2d 107 (D.C. Cir. 1974) ..............................................................20

*Cottonwood Envtl. Law Ctr. v. U.S. Forest Serv.*
    789 F.3d 1075 (9th Cir. 2015) ..........................................................17

*Crisp v. United States*
    966 F. Supp. 973 (E.D. Cal. 1997) ........................................................2

*Cty. of Santa Clara v. Trump*
    250 F. Supp. 3d 497 (N.D. Cal. 2017) ........................................6, 8, 10, 21

*Dep't of Fair Emp't & Hous. v. Lucent Techs.*
    642 F.3d 728 (9th Cir. 2011) ..............................................................4

*Desert Water Agency v. Dep't of the Interior*
    849 F.3d 1250 (9th Cir. 2017) ..........................................................18

*Doe v. Holy See*
    557 F.3d 1066 (9th Cir. 2009) ..............................................................2

*DTCC Data Repository (U.S.) LLC v. United States Commodity Futures Trading Comm'n*
    25 F. Supp. 3d 9 (D. D.C. 2014) ........................................................20

*Duke Power Co. v. Carolina Environmental Study Group, Inc.*
    438 U.S. 59 (1978) ..........................................................................17

*Encino Motorcars, LLC v. Navarro*
    136 S. Ct. 2117 (2016) ........................................................................5

*Energy Future Coal. v. E.P.A.*
    793 F.3d 141 (D.C. Cir. 2015) ..........................................................19

*Ex parte Levitt*
    302 U.S. 633 (1937) ..........................................................................12

*F.C.C. v. Fox Television Stations, Inc.*
    556 U.S. 502 (2009) ............................................................................5

*Fowler v. Guerin*
    899 F.3d 1112 (9th Cir. 2018) ..........................................................16

*Franklin v. Massachusetts*
   505 U.S. 788 (1992)........................................................................20

*Harrell v. The Fla. Bar*
   608 F.3d 1241 (11th Cir. 2010) .....................................................19

*Havens Realty Corp. v. Coleman*
   455 U.S. 363 (1982)..................................................................3, 11

*In re City of Detroit, Michigan*
   838 F.3d 792 (6th Cir. 2016) .........................................................16

*Int'l Longshoremen's & Warehousemen's Union v. Meese*
   891 F.2d 1374 (9th Cir. 1989) .......................................................23

*Iowa League of Cities v. E.P.A.*
   711 F.3d 844 (8th Cir. 2013) ...........................................4, 6, 12, 14

*Jeffrey O. v. City of Boca Raton*
   511 F. Supp. 2d 1339 (S.D. Fla. 2007) ..........................................22

*Koontz v. St. Johns River Water Management Dist.*
   570 U.S. 595 (2013)......................................................................16

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*
   572 U.S. 118 (2014)......................................................................12

*Louisiana Forestry Ass'n Inc. v. Sec'y U.S. Dep't of Labor*
   745 F.3d 653 (3rd Cir. 2014) .........................................................19

*Lujan v. Defenders of Wildlife*
   504 U.S. 555 (1992)..............................................................3, 12, 14

*Massachusetts v. E.P.A.*
   549 U.S. 497 (2007)..............................................................3, 4, 14

*McClung v. City of Sumner*
   548 F.3d 1219 (9th Cir. 2008) .......................................................16

*Minard Run Oil Co. v. U.S. Forest Serv.*
   670 F.3d 236 (3rd Cir. 2011) .........................................................14

*Mortensen v. First Federal S & L Ass'n*
   549 F.2d 884 (3rd Cir. 1977) ...........................................................2

*Nat'l Council of La Raza v. Cegavske*
   800 F.3d 1032 (9th Cir. 2015) .........................................................3

*National Family Planning and Reproductive Health Ass'n, Inc. v. Gonzales*
   468 F.3d 826 (D.C. Cir. 2006)........................................................15

*Ochadleus v. City of Detroit, Mich.*
  137 S. Ct. 1584 (2017)............................................................................................16

*Oklevueha Native American Church of Hawaii, Inc. v. Holder*
  676 F.3d 829 (9th Cir. 2012) ................................................................................19

*Olmstead v. L.C.*
  527 U.S. 581 (1999)..............................................................................................10

*Or. Nat. Desert Ass'n v. U.S. Forest Serv.*
  465 F.3d 977 (9th Cir. 2006) ................................................................................22

*Organic Consumers Ass'n v. Sanderson Farms, Inc.*
  284 F. Supp. 3d 1005 (N.D. Cal. 2018) ...............................................................11

*Organized Village of Kake v. U.S. Dep't of Agric.*
  795 F.3d 956 (9th Cir. 2015) ..................................................................................8

*Overlook Mut. Homes, Inc. v. Spencer*
  666 F. Supp. 2d 850 (S.D. Oh. 2009) ...................................................................22

*Owner-Operator Independent Drivers Ass'n, Inc. v. Federal Motor Carrier Safety Admin.*
  656 F.3d 580 (7th Cir. 2011) ................................................................................19

*Pennsylvania v. Trump*
  281 F. Supp. 3d 553 (E.D. Pa. 2017) .................................................4, 8, 10, 13

*Perez v. Mortg. Bankers Ass'n*
  135 S. Ct. 1199 (2015)............................................................................................5

*Pub. Lands for the People, Inc. v. U.S. Dep't of Agric.*
  733 F. Supp. 2d 1172 (E.D. Cal. 2010) ...........................................................18, 19

*Quinn v. City of Detroit Mich.*
  137 S. Ct. 2270 (2017)..........................................................................................16

*Sackett v. E.P.A.*
  566 U.S. 120 (2012)..............................................................................................19

*Savage v. Glendale Union High Sch. Dist. No. 205*
  343 F.3d 1036 (9th Cir. 2003) ................................................................................2

*Sierra Club v. E.P.A.*
  699 F.3d 530 (D.C. Cir. 2012) ..............................................................................12

*Smith v. Pac. Properties & Dev. Corp.*
  358 F.3d 1097 (9th Cir. 2004) ..............................................................................11

*Solenex LLC v. Jewell*
  ___F. Supp. 3d ___, 2018 WL 4567132 (D. D.C. 2018)......................................15

*Sugar Cane Growers Coop. of Fla. v. Veneman*
   289 F.3d 89 (D.C. Cir. 2002)............................................................................3, 14

*Susan B. Anthony List v. Driehaus*
   134 S. Ct. 2334 (2014).......................................................................9, 10, 16, 18

*Texas v. United States*
   809 F.3d 134 (5th Cir. 2015), *aff'd without opinion by an equally divided Court*
   136 S. Ct. 2271 (Jun. 13, 2016) ...........................................................3, 4, 6, 8, 13

*Thomas v. Anchorage Equal Rights Comm'n*
   220 F.3d 1134 (9th Cir. 2000) (*en banc*) ...............................................................16

*Thomas v. Union Carbide Agricultural Products Co.*
   473 U.S. 568 (1985)..................................................................................................18

*Town of Abita Springs v. U.S. Army Corps of Engineers*
   153 F. Supp. 3d 894 (E.D. La. 2015).......................................................................7

*Underwood v. Mackay*
   614 Fed.Appx. 871 (9th Cir. 2015).........................................................................17

*U.S. Army Corps of Engineers v. Hawkes Co.*
   136 S. Ct. 1807 (2016)...........................................................................................7, 22

*Washington v. United States Dep't of State*
   318 F. Supp. 3d 1247 (W.D. Wash. 2018)...............................................................4

*White v. Lee*
   227 F.3d 1214 (9th Cir. 2000) .................................................................................2

**Statutes**

5 U.S.C.
   § 551(13)..................................................................................................................22
   §§ 701, *et seq.* .........................................................................................................1
   § 702 .........................................................................................................................4
   § 704 .........................................................................................................................4

8 U.S.C.
   § 1324b, Immigration and Nationality Act (INA) .....................................................9

42 U.S.C.
   §§ 3601, *et seq.*, Fair Housing Act (FHA)...............................................................5
   §§ 12101, *et seq.*, Americans with Disabilities Act (ADA) ......................................2

**Rules**

Federal Rule of Civil Procedure
  Rule 12(b)(1)................................................................................................................1, 2, 3, 12

**Other Authorities**

David M. Perry, *Companies That Exploit Disabled People Have a Friend in Jeff Sessions*,
  Pacific Standard (Jan. 3, 2018), https://psmag.com/economics/jeff-sessions-roll-back-
  disability-rights ........................................................................................................................13

# INTRODUCTION

Plaintiff the City and County of San Francisco (the "City") filed this action because the United States Department of Justice ("DOJ" or the "Department") rescinded, without any rationale or meaningful explanation, eight documents providing guidance to the City on laws that protect immigrants, the poor, people of color, and people with disabilities.  First Amended Complaint, filed 7/30/18 (Docket No. 30) ("FAC") ¶ 1.  The City alleges that those rescissions violate the Administrative Procedure Act, 5 U.S.C. §§ 701, *et seq.* ("APA").  FAC ¶¶ 1, 9-11, 112-119.

DOJ moves to dismiss the case under Federal Rule of Civil Procedure 12(b)(1), arguing that the City lacks standing under Article III of the United States Constitution, that the case is not ripe for adjudication, and that the Department's rescissions are not yet final agency action.  Motion to Dismiss, filed 9/27/18 (Docket No. 36) ("MTD").  DOJ obscures the crux of this case (namely the harm caused by its improper rescission of the guidance), mischaracterizes the concrete and immediate harms to the City alleged in the FAC, and ignores the requirement that the Court assume the truth of the City's allegations and draw all reasonable inferences in its favor.  The Department also fails to address the body of law holding that state and local governments directly affected by federal policy have Article III standing to redress violations of the APA.

Viewed in the proper light, the City's allegations illustrate the particularized, concrete, and imminent harm to its reliance interests, its constitutional interests, and its proprietary interest in the improperly rescinded guidance.  San Francisco is a municipality, a sovereign with a constitutional right to pass and enforce laws and regulations, an employer of more than 30,000 people obligated to both comply with and enforce certain federal laws, and an entity with a diverse set of missions and policy objectives.  Without guidance as to which policy shifts the administration intended to enact when it rescinded the guidance, the City must legislate, regulate, and attempt to enforce and comply with the law in a vacuum.  That uncertainty forces the City to expend significant resources, exposes the City to significant and imminent risk of enforcement actions, and frustrates the City's missions— *e.g.*, supporting integrated workplaces for people with disabilities, reducing disproportionate minority contact with the juvenile justice system, and reducing the number of its residents trapped in an impoverishing cycle of fees and fines.

1   Those injuries are the direct result of DOJ's improper rescission, and the APA is designed to

2   prevent them.  Judgment for the City would redress the harm by enjoining rescission and enforcing the

3   APA's reasoned explanation requirements.  Therefore the City has Article III standing.

4   The Department's other arguments are equally unpersuasive.  This is not a suitable case for the

5   application of the disfavored "prudential ripeness" doctrine, and the City properly challenged final

6   agency actions.  Rescission is neither tentative nor interlocutory, and has significant practical legal

7   consequences, including the removal of critical "safe harbors" against enforcement actions.

8   **LEGAL STANDARD**

9   DOJ's "Legal Standard" section is incomplete: Rule 12(b)(1) challenges to jurisdiction can be

10  either "facial, confining the inquiry to allegations in the complaint, or factual, permitting the court to

11  look beyond the complaint."  *Savage v. Glendale Union High Sch. Dist. No. 205*, 343 F.3d 1036, 1039

12  n.2 (9th Cir. 2003), *quoting White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000).

13  This is a facial challenge.  Because the Department does not make a factual motion by

14  presenting affidavits or other evidence, "the court must consider the allegations of the complaint as

15  true," *Crisp v. United States*, 966 F. Supp. 973, 974 (E.D. Cal. 1997), *quoting Mortensen v. First*

16  *Federal S & L Ass'n*, 549 F.2d 884, 891 (3rd Cir. 1977), and "draw all reasonable inferences in [the

17  City's] favor."  *Doe v. Holy See*, 557 F.3d 1066, 1073 (9th Cir. 2009) (quotation, quotation marks, and

18  alterations omitted).  "The motion will be denied unless the allegations appear to be frivolous."  *Crisp*,

19  966 F. Supp. at 974, *citing Black v. Payne*, 591 F.2d 83, 86 n.1 (9th Cir. 1979), *cert. denied*, 444 U.S.

20  867 (1979).

21  DOJ does not argue that the allegations in the FAC are frivolous.  And the Department cannot

22  defeat standing by noting that the City's allegations are just that: allegations (rather than, say,

23  testimonial evidence).  The Department confuses the inquiry when it asserts a lack of "factual support"

24  or "clear markers" in the FAC, MTD 12, or when it advances its own speculation to question the harm

25  alleged.  *See id*. (speculating that "some other factor" than rescission could lead to enforcement of the

26  Americans with Disabilities Act, 42 U.S.C. §§ 12101, *et seq.* (ADA) against the City).  It would be

27  improper to require the City to provide detailed "factual allegations in support of [its] assertion[s,]"

28  MTD 13, where the Department has produced no such affidavits or declarations of its own.  Indeed

both parties anticipate resolving this by summary judgment—when presentation of such evidence is appropriate.

**ARGUMENT**

**I.    THE CITY HAS ARTICLE III STANDING TO CHALLENGE IMPROPER RESCISSION OF THE EIGHT DOJ DOCUMENTS.**

The FAC establishes Article III standing because its allegations, and reasonable inferences drawn therefrom, establish that improper rescission causes harm redressable by a judgment in the City's favor.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) ("*Lujan*").

### A.    The City Can Sue to Redress a Procedural Injury Under the APA.

To survive a facial motion to dismiss under Rule 12(b)(1), the City need only "broadly allege[ ]" injury as a result of DOJ's decision to rescind the eight documents without stating its reasoning.  *Nat'l Council of La Raza v. Cegavske*, 800 F.3d 1032, 1040 (9th Cir. 2015), *quoting Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982) ("*Havens Realty*").  "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we presum[e] that general allegations embrace those specific facts that are necessary to support the claim."  *City of Los Angeles v. Bank of Am. Corp.*, No. CV 13-9046 PA (AGRx), 2014 WL 2770083, *3 (C.D. Cal. June 12, 2014) ("*City of Los Angeles*") (quotation and marks omitted).

The City carries that burden by alleging that DOJ's procedural violations cause particularized, concrete, and substantially likely harm.  *See Massachusetts v. E.P.A.*, 549 U.S. 497, 518 (2007) ("A [litigant] who alleges a deprivation of a procedural protection to which he is entitled never has to prove that if he had received the procedure the substantive result would have been altered.  All that is necessary is to show that the procedural step was connected to the substantive result"), *quoting Sugar Cane Growers Coop. of Fla. v. Veneman*, 289 F.3d 89, 94–95 (D.C. Cir. 2002) ("*Sugar Cane Growers*").

Several recent appellate cases examine Article III standing in the context of government entities suing to enforce the APA.  In *Texas v. United States*, 809 F.3d 134 (5th Cir. 2015), *as revised* (Nov. 25, 2015), *aff'd without opinion by an equally divided Court*, 136 S. Ct. 2271 (Jun. 13, 2016) ("*Texas v. U.S.*"), the Fifth Circuit explained that state governments "are not normal litigants for the

purposes of invoking federal jurisdiction," *id.* at 151, *quoting Massachusetts v. E.P.A.*, 549 U.S. at 518, and that states asserting standing deserve "special solicitude" when they challenge "final agency action for which there is no other adequate remedy in a court." *Id.* at 152, *quoting* 5 U.S.C. § 704. "In enacting the APA, Congress intended for those 'suffering legal wrong because of agency action' to have judicial recourse, and the states fall well within that definition." *Id.*, *citing* 5 U.S.C. § 702 (additional citation omitted). *See also Pennsylvania v. Trump*, 281 F. Supp. 3d 553, 556 (E.D. Pa. 2017) ("*PA v. Trump*") (giving Pennsylvania "special solicitude" and applying *Texas v. U.S.*: "There is no daylight between the 2015 Texas suit against the federal government and the current Commonwealth suit against the federal government."); *Washington v. United States Dep't of State*, 318 F. Supp. 3d 1247, 1255 (W.D. Wash. 2018) ("a State has a legally protectable interest if it has a sovereign, quasi-sovereign, or proprietary interest that would be impacted by the litigation"), *citing Dep't of Fair Emp't & Hous. v. Lucent Techs.*, 642 F.3d 728, 753 n.5 (9th Cir. 2011).

In *Iowa League of Cities v. E.P.A.*, 711 F.3d 844 (8th Cir. 2013) ("*Iowa League of Cities*"), the Eighth Circuit held that Iowa cities had "established an injury in fact" for an APA claim because they

> have a concrete interest not only in being able to meet their regulatory responsibilities but in avoiding regulatory obligations above and beyond those that can be statutorily imposed upon them. Notice and comment procedures for EPA rulemaking … were undoubtedly designed to protect the concrete interests of such regulated entities by ensuring that they are treated with fairness and transparency after due consideration and industry participation.

*Id.* at 871, *citing Chrysler Corp. v. Brown*, 441 U.S. 281, 316 (1979) ("Congress made a judgment that notions of fairness and informed administrative decisionmaking require that agency decisions be made only after affording interested persons notice and an opportunity to comment.").

Those principles apply here. The City challenges final agency action for which there is no other adequate remedy in court, and asserts a procedural interest in the Department's compliance with the APA. The City is a regulated entity with concrete interests in fairness and transparency, meeting its responsibilities, avoiding additional and amorphous regulatory obligations, and pursuing its economic interests and policy goals. Improper rescission directly and detrimentally affects those interests.

**B.   The City Has a Reliance Interest In Both the Rescinded Guidance and Compliance with the APA.**

The City does not dispute the federal government's right to change its policies or priorities. But when DOJ enacts a policy change—like rescinding eight documents that guide compliance with federal law—the APA gives the City and the Court a right to know the rationale behind that change. "Agencies are free to change their existing policies, but in explaining its changed position, an agency must be cognizant that longstanding policies may have 'engendered serious reliance interests that must be taken into account.'" *Encino Motorcars, LLC v. Navarro*, 136 S. Ct. 2117, 2120 (2016) ("*Encino Motorcars*"), *quoting F.C.C. v. Fox Television Stations, Inc.*, 556 U.S. 502, 515 (2009) ("*FCC v. Fox*").  The agency's explanation for its decision must be clear enough that the agency's "path may reasonably be discerned." *Bowman Transp., Inc. v. Arkansas–Best Freight Sys., Inc.*, 419 U.S. 281, 286 (1974).

The City has a reliance interest in Department compliance with the APA.  The City relies on both the rescinded guidance and any new DOJ policies to guide its lawmaking, regulation, enforcement activity, policies, and priorities.  "[T]he APA requires an agency to provide more substantial justification when 'its new policy rests upon factual findings that contradict those which underlay its prior policy; or when its prior policy has engendered serious reliance interests. … It would be arbitrary and capricious to ignore such matters.'" *Perez v. Mortg. Bankers Ass'n*, 135 S. Ct. 1199, 1209 (2015), *quoting FCC. v. Fox*, 556 U.S. at 515.  The reasons for rescission need not be "*better* than the reasons for the old [guidance].  It suffices that the new policy is permissible under the statute, that there are good reasons for it, and that the agency believes it to be better, which the conscious change adequately indicates." *FCC v. Fox*, 556 U.S. at 515 (emphasis in original).

**C.   The City Has a Constitutional Interest In Preserving Its Ability to Make and Enforce Laws.**

The City must assess its laws and regulations in harmony with new DOJ policy, and comply with and enforce certain federal laws, like the ADA and the Fair Housing Act, 42 U.S.C. §§ 3601, *et seq*. (FHA).  *See* FAC ¶¶ 41-45, 58, 61-62.  San Francisco has "long regulated" in the area of group living arrangements for persons with disabilities, a topic covered by DOJ's rescinded Joint Statement

on the FHA.  *Id.* ¶ 62 (*citing* 19 different San Francisco Planning Code provisions).  The Joint

Statement "was a critical resource in providing direction to local governments about what they could

and could not do in compliance with federal law."  *Id.* ¶ 64.

The City's legislative power and its enforcement obligations create "quasi-sovereign" interests

harmed by rescission of, *e.g.*, the Joint Statement and the *Olmstead* guidance on ADA issues.  In *Texas*

*v. U.S.*, the Fifth Circuit described such interests as follows:

> [S]tates have a sovereign interest in the power to create and enforce a legal
> code.  Pursuant to that interest, states may have standing based on (1)
> federal assertions of authority to regulate matters they believe they control
> (2) federal preemption of state law, and (3) federal interference with the
> enforcement of state law, at least where the state statute at issue
> regulate[s] behavior or provide[s] for the administration of a state
> program and does not simply purport [ ] to immunize [state] citizens from
> federal law.  Those intrusions are analogous to pressure to change state
> law.

809 F.3d at 153 (quotation marks, footnotes, and citations omitted).  Like Texas, the City has authority

to regulate matters within its control, and it relies on that authority to administer programs, pass non-

preempted laws and regulations, and ensure compliance with federal laws like the ADA and the FHA.

Like the municipalities in *Iowa League of Cities*, San Francisco must exercise its authority while

meeting its own regulatory responsibilities.  711 F.3d at 871.  Improper rescission of the *Olmstead*

guidance specifically undercuts the City's ability to comply with the ADA and "to ensure that its

departments, programs, and contracting organizations are providing employment services that are fully

integrated."  FAC ¶ 52.  Improper rescission of the Joint Statement impedes the City's ability to

comply with the FHA, *id.* ¶¶ 61-65, and to evaluate its agencies' compliance with the law.  *Id.* ¶ 65.

Thus the Department's APA violations "implicate a constitutional interest, the rights of states

and local governments to determine their own local policies and enforcement priorities pursuant to the

Tenth Amendment."  *Cty. of Santa Clara v. Trump*, 250 F. Supp. 3d 497, 525 (N.D. Cal. 2017),

*reconsideration denied*, 267 F. Supp. 3d 1201 (N.D. Cal. 2017) (citations omitted) ("*Santa Clara*"),

*appeal dismissed as moot sub nom. City & Cty. of San Francisco v. Trump*, No. 17-16886, 2018 WL

1401847 (9th Cir. Jan. 4, 2018).

**D.    The City Can Sue to Redress Harm to Its Proprietary Interests.**

The City also has Article III standing "to protect its own 'proprietary interests.' … The term 'proprietary' is somewhat misleading, for a municipality's cognizable interests are not confined to protection of its real and personal property.  The 'proprietary interests' that a municipality may sue to protect are as varied as a municipality's responsibilities, powers, and assets." *City of Sausalito v. O'Neill*, 386 F.3d 1186, 1197 (9th Cir. 2004) (citation omitted).  *See also id.* at 1198 (examples of "constitutionally sufficient injury" to proprietary interests include: interference with city's enforcement powers or its "powers of revenue collection and taxation") (citations omitted).

Specific injuries to the City's proprietary interests include economic harm, an increased and imminent risk of enforcement actions against the City, and frustration of the City's core missions.

**1.    Improper Rescission Harms the City Economically.**

Improper rescission directly harms San Francisco's economic interests.  *See, e.g., Town of Abita Springs v. U.S. Army Corps of Engineers*, 153 F. Supp. 3d 894 (E.D. La. 2015) (municipalities have standing where they allege concrete harm to aesthetic or economic interests).

For example, improper rescission of the *Olmstead* guidance jeopardizes San Francisco's access to Workforce Innovation and Opportunity Act (WIOA) and Community Development Block Grant (CDBG) funds.  FAC ¶¶ 48, 58.  Improper rescission of the citizenship status discrimination letters makes it more difficult—and therefore expensive—for the City to process more than 4,600 Employment Eligibility Verification forms annually, FAC ¶ 71, and subjects the City—in its capacity as an employer—to DOJ enforcement action and civil penalties.  FAC ¶ 80.  And improper rescission of the guidance concerning fines and fees "increases reliance on public benefits and public services[,]" FAC ¶ 94, as well as the San Francisco Human Services Agency's need "to cover court fees, traffic tickets, and similar fines and fees, on a case by case basis.  FAC ¶ 97.[1]

Loss of WIOA and/or CDBG funds, redirection of resources to fund ADA compliance and processing of immigration forms, costs to defend lawsuits (and potentially to pay civil penalties), and increased dependence on public benefits are all real and immediate harms that suffice to establish

---

[1] For the Court's convenience, the City includes as **Appendix A** a table matching each rescinded document to one or more proprietary interests.

Article III standing.  "A loss of funds promised under federal law satisfies Article III's standing

requirement."  *Santa Clara*, 250 F. Supp. 3d at 526, *quoting Organized Village of Kake v. U.S. Dep't*

*of Agric.*, 795 F.3d 956, 965 (9th Cir. 2015) (internal quotations and alterations omitted).

The City's economic harm is less attenuated than Sausalito's "detrimental increase in traffic

and crowds in downtown Sausalito, affecting City-owned streets as well as municipal management

and public safety functions"—yet the Ninth Circuit held that those allegations were enough to

establish Sausalito's Article III standing.  *City of Sausalito*, 386 F.3d at 1198.  The City alleges both a

loss of funding and diversion of resources; courts have held that lost revenue is enough.  *City of*

*Oakland v. Lynch*, 798 F.3d 1159, 1164 (2015) ("An expected loss of tax revenue can constitute a

sufficient injury for purposes of Article III standing[ ]"), *citing City of Sausalito*, 386 F.3d at 1194;

*City of Los Angeles*, 2014 WL 2770083 at *5 (LA "experienced decreased tax revenues due to reduced

property values and had to increase spending on police and fire protection and other services")

(citations to four other courts that "found injury in fact based on these financial injuries" omitted).

DOJ characterizes the City's public benefits and fine/fee relief expenditures as optional: "It is

Plaintiff's exclusive prerogative whether or not, and to what extent, to assume the liability of unpaid

fines and fees."  MTD 17.  The Fifth Circuit rejected that argument in *Texas v. U.S.*

> Although Texas could avoid financial loss by requiring applicants to pay
> the full costs of licenses, it could not avoid injury altogether.  States have
> a sovereign interest in the power to create and enforce a legal code, and
> the possibility that a plaintiff could avoid injury by incurring other costs
> does not negate standing.
>
> Indeed, treating the availability of changing state law as a bar to standing
> would deprive states of judicial recourse for many bona fide harms.  For
> instance, under that theory, federal preemption of state law could never
> be an injury, because a state could always change its law to avoid
> preemption.  But courts have often held that states have standing based on
> preemption.  And states could offset almost any financial loss by raising
> taxes or fees.  The existence of that alternative does not mean they lack
> standing.

809 F.3d at 156–57 (quotations, alterations, and footnotes omitted).  Likewise, in *PA v. Trump*, when

federal policy changes forced Pennsylvania to increase its expenditures for State and local programs

providing contraceptive services, the government had standing.  "This is not a speculative harm. …

[Pennsylvania] need not sit idly by and wait for fiscal harm to befall it."  281 F. Supp. 3d at 567.

### 2.     Improper Rescission Creates a Significant Risk of Enforcement Actions Against the City.

Rescission removes the "safe harbors" created by Department guidance, creating a significant risk that the City will face enforcement actions requiring it to defend its compliance with the ADA or the FHA.  As an employer, the City must also comply with the anti-discrimination provisions of the Immigration and Nationality Act, 8 U.S.C. § 1324b (INA).  FAC ¶¶ 69-73.  DOJ enforces those provisions.  *Id.* ¶ 72.

DOJ does not dispute that the City can demonstrate an injury in fact by showing a credible threat of legal action.  *See, e.g.,* MTD 10, 11, 18, 22.  But the Department cites the wrong standard for the City's burden to establish this type of injury.

DOJ insists the City must demonstrate "a concrete plan" to violate a specific statute, threats by the Department to initiate an enforcement action, and a history of past enforcement.  *See* MTD 6, 10, 15, & 18.  For that standard, the Department cites *Alaska Right to Life Political Action Comm. v. Feldman*, 504 F.3d 840 (9th Cir. 2007) ("*ARL PAC*").  *ARL PAC* predates the Supreme Court's decision in *Susan B. Anthony List v. Driehaus*, 134 S. Ct. 2334 (2014) ("*Susan B. Anthony List*"), clarifying that "a plaintiff satisfies the injury-in-fact requirement where he alleges an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder."  *Id.* at 2342, *quoting Babbitt v. Farm Workers*, 442 U.S. 289, 298 (1979) (quotation marks omitted).  Under *Susan B. Anthony List*, it is enough for the City to show that enforcement is "sufficiently imminent" based on a fear that is not "imaginary or wholly speculative."  *Id.* at 2342-43 (citation omitted).  "[A]n actual arrest, prosecution, or other enforcement action is not a prerequisite to challenging the law."  *Id.*

Like the plaintiff in *Susan B. Anthony List,* the City intends to continue its programs and activities in the future, in a changed legal environment where it will be vulnerable to enforcement.  *See* 134 S. Ct. at 2340.  As in *Susan B. Anthony List*, past enforcement action concerning *Olmstead*-related violations (here, past enforcement by the DOJ against San Francisco, *see* FAC ¶ 59), is "good evidence" that the threat of enforcement is substantial.  *Id.* at 2345 (citation omitted).  Like the

plaintiff in *Susan B. Anthony List*, the City does not seek a declaratory judgment purely for clarification, but seeks relief from such a credible threat.

Moreover, the requirements are different for government plaintiffs. Because the rescinded guidance was directed at entities like the City, and because the City has the rights, obligations, and interests described above, the chaos caused by rescission without rationale suffices on its own. *See Santa Clara*, 250 F. Supp. 3d at 526, 528 ("need to mitigate a potential sudden loss of funds" threw Counties' "budgeting processes into uproar"; Counties "established a well-founded fear of enforcement" of sanctuary city order). San Francisco "need not sit idly by and wait for fiscal harm to befall it." *PA v. Trump*, 281 F. Supp. 3d at 567.

Without a rationale for rescission, neither the City nor the Court can discern exactly what DOJ's current policies and priorities are, nor the basis on which the Department rescinded each document (*e.g.*, whether each was deemed "unnecessary," "improper," or "inconsistent with the law"). That uncertainty is not, as the Department argues, a subject for academic exercises unworthy of the Court's time and energy. *See, e.g.,* MTD 5, 8. It is a pit of vipers for the City, which must continue to act in areas now devoid of the safe harbors provided by DOJ guidance. *See Santa Clara*, 250 F. Supp. 3d at 521-525. For example, improper rescission of the guidance concerning fines and fees eliminates a safe harbor for the City when DOJ reviews "state and local governments' compliance with the law." FAC ¶ 93.

As in *Santa Clara*, the administration's own actions and statements demonstrate that the threat of enforcement is real and imminent. 250 F. Supp. 3d at 522-524. DOJ took "previous action against San Francisco over *Olmstead*-related violations[,]" FAC ¶ 59, including an eight-year process of negotiating a settlement including DOJ monitoring of the Laguna Honda Hospital. *Id.* Now there are concrete reasons to believe that DOJ will target the City's integrated settings for workers with disabilities—settings intended to comply with *Olmstead* and the rescinded *Olmstead* guidance—at the urging of profitable "sheltered workshop" companies whose business models contravene *Olmstead v. L.C.*, 527 U.S. 581 (1999). FAC ¶ 56. The rescinded guidance on INA compliance is especially important to the City in its role as an employer, "given the recent increase in Immigration and Customs Enforcement ('ICE') I-9 audits and enforcement actions[,]" FAC ¶ 81, and the

administration's directive to increase such worksite investigations by 400-500 percent.  *Id.*

### 3.    Improper Rescission Frustrates the City's Core Missions.

The City does not sue on behalf of its individual residents but alleges direct harm to its interests as a municipality, an employer, and a sovereign.  But the City is also an entity with an interest in redressing "concrete and demonstrable injury to [its] activities," creating a "drain on the organization's resources[.]"  *Havens Realty*, 455 U.S. at 379.  *See City of Oakland v. Wells Fargo Bank*, *N.A.*, No. 15-CV-04321-EMC, 2018 WL 3008538, *11 (N.D. Cal. June 15, 2018) (applying *Havens Realty* to Fair Housing Act case brought by City of Oakland).

Judge Seeborg recently summarized the standard for standing in this area.  The City "may show an 'injury in fact' sufficient to confer direct standing by alleging: (1) frustration of its organizational mission; and (2) diversion of its resources to combat the challenged actions by defendant."  *Organic Consumers Ass'n v. Sanderson Farms, Inc.*, 284 F. Supp. 3d 1005, 1010 (N.D. Cal. 2018), *quoting Smith v. Pac. Properties & Dev. Corp.*, 358 F.3d 1097, 1101 (9th Cir. 2004) (quotation marks omitted).

Diversion of resources is covered in the discussion of economic harm above.  The FAC is also replete with allegations that improper rescission frustrates the City's core missions.  The City alleges that: improperly rescinding the *Olmstead* guidance makes it more difficult for City departments to comply with the ADA, FAC ¶ 43; improperly rescinding the Dear Colleague Letter and Juvenile Fines and Fees Advisory frustrates the City's mission of preventing fines, fees, and penalties from trapping "people in a cycle of debt, … and becom[ing] a driver of inequality, creating additional layers of punishment for those moving through the justice system," FAC ¶ 83, "hinders San Francisco's ability to determine whether its own fines and fees practices are lawful," FAC ¶ 89, and undercuts reentry efforts, FAC ¶ 95; and improperly rescinding the Technical Assistance Manual frustrates the City's mission to redress disproportionate minority contact ("DMC") at every stage of the juvenile justice system.  FAC ¶¶ 101-103.

DOJ attempts to cast these injuries as insufficiently concrete, dismissing as "conclusory" the City's description of its efforts "to promote inclusivity to the greatest extent possible."  MTD 7, *quoting* FAC ¶ 51.  But the Department cites no case requiring that a plaintiff provide more detail

1   about its mission in order to survive a 12(b)(1) facial attack, opting instead to recite the axiom that a

2   "general interest common to all members of the public" is insufficient to establish Article III standing.

3   MTD 8, *quoting Ex parte Levitt*, 302 U.S. 633, 636 (1937).

4        The City's interest in enforcing the APA is far different from the interest shared by "all

5   members of the public."  The City "provides employment services to people with disabilities through

6   contractors" and a subsidiary agency, the San Francisco Office of Economic and Workforce

7   Development ("OEWD").  FAC ¶ 47.  Members of the public do not.  The City receives federal funds

8   under WIOA and SDBG, and "uses those funds to, among other things, fund contracts with non-profit

9   organizations" including Toolworks, The Arc, and Positive Resource Center.  FAC ¶ 48.  Members of

10  the public do not.  The City relies on the *Olmstead* guidance to govern its contracts with such

11  organizations, and their provision of "services to San Francisco residents with disabilities."  FAC ¶¶

12  48, 50.  Members of the public do not.

13       **E.**    **The City's Injuries Are Fairly Traceable to Improper Rescission.**

14       Where a plaintiff is the subject of agency action, "there is ordinarily little question that the

15  action ... has caused him injury, and that a judgment preventing ... the action will redress it."  *Lujan*,

16  504 U.S. at 561–62.  *See also Allen v. Wright*, 468 U.S. 737, 751 (1984), *abrogated on other grounds

17  by Lexmark Int'l, Inc. v. Static Control Components, Inc*., 572 U.S. 118, 134 (2014).  "This is

18  particularly true for individuals asserting violations of procedural rights."  *Iowa League of Cities*, 711

19  F.3d at 871, *citing Lujan*, 504 U.S. at 572 n. 7 ("The person who has been accorded a procedural right

20  to protect his concrete interests can assert that right without meeting all the normal standards for

21  redressability and immediacy.").

22       The standard for APA litigation is similar.  "Having shown its members' redressable concrete

23  interest, [an entity] can assert violation of the APA's notice-and-comment requirements, as those

24  procedures are plainly designed to protect the sort of interest alleged. As to such requirements, [the

25  plaintiff] enjoys some slack in showing a causal relation … [to] the legal violation claimed."  *Sierra

26  Club v. E.P.A.*, 699 F.3d 530, 533 (D.C. Cir. 2012).

27  //

28  //

1       Without citing these standards, the Department argues that the City cannot establish the

2   requisite causal connection between rescission and its injuries-in-fact.  *See* MTD 9, 13-14, 16, 18 n.4,

3   21.  Each of its arguments fail.

4       First, DOJ is wrong to propose that rescission of the *Olmstead* guidance creates no more than a

5   "subjective chill" or that harm to the City's interest in integrated workplaces would come solely from

6   third parties or be self-inflicted.  MTD 9.  The City alleges harm caused by the Department's apparent

7   decision to side with private sheltered-workshop companies who resist the mandate of *Olmstead* to

8   place people with disabilities in community living if "treatment professionals have determined that

9   community placement is appropriate, the transfer from institutional care to a less restrictive setting is

10  not opposed by the affected individual, and the placement can be reasonably accommodated[.]"  *Id.* at

11  587.  *See* FAC ¶ 56, *citing* David M. Perry, *Companies That Exploit Disabled People Have a Friend*

12  *in Jeff Sessions*, Pacific Standard (Jan. 3, 2018), https://psmag.com/economics/jeff-sessions-roll-back-

13  disability-rights ("Basically, everyone deserves an opportunity to work in integrated settings. That's

14  only possible if education systems, workplaces, and housing providers play by the same sets of rules

15  governing the public and private mechanisms of disability rights work together.").  That "causal

16  nexus" is not speculative.  MTD 9.  Improperly rescinding the set of rules governing community living

17  and placement, in favor of companies that push institutionalization and sheltered workshops, harms the

18  City directly.

19      Second, DOJ cannot brush away the harm to the City caused by poverty and recidivism by

20  arguing "[l]ocal governments and courts, not Defendants, are responsible for the imposition and

21  collection of fees and fines."  MTD 16.  The Department itself evaluates whether local fines and fees

22  comport with federal civil rights laws, FAC ¶ 92, and provides funding to local agencies, including the

23  City's Juvenile Probation Department.  FAC ¶ 91.  A government's option to "avoid financial loss" by

24  cutting in other areas does not defeat standing.  *Texas v. U.S.,* 809 F.3d at 156.  And the fact that the

25  City "sued in response to a significant change in the defendants' policies shows that its injury is not

26  self-inflicted."  *PA v. Trump*, 281 F. Supp. 3d at 568, *quoting Texas v. U.S.*, 809 F.3d at 158.

27      Finally, it requires no speculation about "the actions of … hypothetical third parties," MTD 21,

28  to credit the City's assertion of harm from rescission of the Technical Assistance Manual regarding

DMC with the juvenile justice system.  FAC ¶¶ 99-105.  Without a rationale for that decision, the City cannot know whether the DOJ will shift from the prior "multidisciplinary approach" to reducing DMC, FAC ¶ 100, to a focus on "public safety and the victim."  FAC ¶ 104 (quotation and citation omitted).  That uncertainty, in the City's juvenile justice system and among neighboring "jurisdictions abandoning or scaling back" their DMC reduction efforts, harms the City.  FAC ¶ 103.

## F.        A Favorable Judicial Decision Would Redress the Injuries.

The City need not clear a high bar to prove redressability.  A plaintiff "vested with a procedural right … has standing if there is some possibility that the requested relief will prompt the injury-causing party to reconsider the decision that allegedly harmed the litigant."  *Massachusetts v. EPA*, 549 U.S. at 518 (emphasis added), *quoting Lujan*, 504 U.S. at 572, n.7.  "[R]edressability in this context does not require petitioners to show that the agency would alter its [decision] upon following the proper procedures."  *Iowa League of Cities*, 711 F.3d at 871 (8th Cir. 2013), *citing Sugar Cane Growers,* 289 F.3d at 95 ("If a party claiming the deprivation of a right to notice-and-comment rulemaking under the APA had to show that its comment would have altered the agency's rule, section 553 would be a dead letter."); *Minard Run Oil Co. v. U.S. Forest Serv.*, 670 F.3d 236, 247 n. 4 (3rd Cir. 2011) ("Even if the [U.S. Forest Service is correct on the merits], the Agreement nevertheless establishes—in violation of appellees' notice and comment rights—a new substantive rule.... This suffices for standing purposes.").

An injunction against rescission of these eight documents (*see* FAC, Prayer For Relief 4) and an order requiring the Department to comply with the APA's requirements would provide the clarity needed for the City to enforce its laws, create regulations, and pursue its own missions and policy goals.  An injunction would restore the *status quo ante* and remove the economic harm, frustration of the City's missions, and imminent threat of enforcement.  The City would regain its ability to assert a "safe harbor" defense to enforcement actions.  *See* FAC ¶ 80.

The Department generally declines to address redressability, or combines redressability arguments with attacks on causation, framing the City's allegations as unclear or attenuated.  *See, e.g.,* MTD 14, 16.  (In one instance, DOJ argues mootness or redundancy in the guise of redressability. MTD 28.  That argument is addressed along with the Department's "finality" arguments, below.)

1     DOJ does speculate that the City could better redress the harm caused by improper rescission

2 of the *Olmstead* guidance by petitioning for adoption of a rule clarifying its responsibilities under the

3 ADA.  MTD 13.  That suggestion is impractical, and highlights the need for this litigation.  After

4 making such a request, the City would remain vulnerable to enforcement actions for the months or

5 years it would take for a rule to be considered, let alone adopted.  *Cf. Solenex LLC v. Jewell*, ___ F.

6 Supp. 3d ___, 2018 WL 4567132, *6 (D. D.C. 2018) ("Agency delay of course has a practical effect: it

7 creates reliance interests"; failure to consider those reliance interests is arbitrary and capricious).

8     Because the City sufficiently alleges a procedural injury, it need not endure such a process.

9 "[F]or Article III purposes, we may recognize a procedural injury when a procedural requirement has

10 not been met, so long as the plaintiff also asserts a concrete interest that is threatened by the failure to

11 comply with that requirement."  *City of Sausalito*, 386 F.3d at 1197 (quotation marks omitted).

12     DOJ assigns no weight to the City's procedural interest, as illustrated by its citation to *National*

13 *Family Planning and Reproductive Health Ass'n, Inc. v. Gonzales,* 468 F.3d 826 (D.C. Cir. 2006)

14 ("*National Family Planning*").  MTD 8.  In that case, an organization sought clarification of the

15 interaction between a newly-enacted statute (the Weldon Amendment) and a pre-existing regulation

16 promulgated by the Department of Health and Human Services (HHS).  468 F.3d at 828.  The Court

17 held that, before filing suit, the plaintiff organization could have petitioned HHS to learn how "exactly

18 how the agency proposes to resolve" any tension between the statute and the guidance.  *Id*. at 831.  But

19 *National Family Planning* did not implicate a procedural right to learn the rationale behind a new

20 policy; there was no argument that Congress violated the APA when it passed the Weldon

21 Amendment.  Nor had the administrative agency (HHS) made any changes triggering the APA's

22 requirement to show reasoned decisionmaking.  Thus the plaintiff nonprofit had no procedural

23 injury—whereas here, the failure to provide any insight into the Department's decisionmaking process

24 is a proximate cause of the City's injuries.  In the absence of such insight, the Court must presume

25 DOJ acted arbitrarily and capriciously, and the City's injuries can only be redressed by an injunction

26 against rescission of the eight documents.

27 //

28 //

**II.     THE DEPARTMENT'S RIPENESS ARGUMENTS FAIL.**

    **A.     Prudential Ripeness is a Disfavored Doctrine of Questionable Validity.**

While "Article III ripeness is jurisdictional, [p]rudential considerations of ripeness are discretionary." *McClung v. City of Sumner*, 548 F.3d 1219, 1224 (9th Cir. 2008), *abrogated on other grounds by Koontz v. St. Johns River Water Management Dist.*, 570 U.S. 595 (2013).

Where a plaintiff demonstrates Article III standing, courts are reluctant to dismiss cases on the basis of prudential ripeness.  In fact the Supreme Court explicitly questioned the "continuing vitality of [that] doctrine[ ]" in 2014.  *Susan B. Anthony List*, 134 S. Ct. at 2337.  "[T]o the extent respondents would have us deem petitioners' claims nonjusticiable on grounds that are 'prudential,' rather than 'constitutional,' [t]hat request is in some tension with our recent reaffirmation of the principle that a federal court's obligation to hear and decide cases within its jurisdiction is virtually unflagging." *Susan B. Anthony List,* 134 S. Ct. at 2347 (citations and internal quotations omitted).  *See also Fowler v. Guerin*, 899 F.3d 1112, 1116 (9th Cir. 2018) (prudential ripeness "a disfavored judge-made doctrine"); *In re City of Detroit, Michigan,* 838 F.3d 792, 800 (6th Cir. 2016) ("the Supreme Court has expressed disfavor for prudential doctrines [like prudential ripeness] that abdicate jurisdiction[,] and has emphasized the duty federal courts have to exercise jurisdiction"), *cert. denied sub noms. Ochadleus v. City of Detroit, Mich.* 137 S. Ct. 1584 (2017) *and Quinn v. City of Detroit, Mich.,* 137 S. Ct. 2270 (2017).  (Where DOJ suggests that the City's claims are not <u>constitutionally</u> ripe—because, *e.g.*, they are purportedly "abstract" or "contingent," MTD at 21-22—those arguments "coincide[ ] squarely with standing's injury in fact prong," discussed above.  *Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134, 1138 (9th Cir. 2000) (*en banc*).)

DOJ acknowledges that prudential ripeness is disfavored, MTD 22 n.7, but argues for dismissal on that basis anyway.  MTD 21-24.  The Court should decline the invitation to revive the doctrine.

    **B.     The City's APA Claim Is Ripe for Judicial Review.**

If the Court were to apply prudential ripeness, it would consider "the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Abbott Laboratories v. Gardner*, 387 U.S. 136, 149 (1967) ("*Abbott*"), *abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99 (1977).  The City's claims are ripe for review under that standard.

1

        **1.**       **The Issues in the FAC Are Fit for Judicial Decision.**

2          The City satisfies the "fitness" prong of *Abbott* because additional factual developments would

3  not "significantly advance [the court's] ability to deal with the legal issues presented[ ] or aid [it] in

4  their resolution." *Duke Power Co. v. Carolina Environmental Study Group, Inc.*, 438 U.S. 59, 82

5  (1978) ("*Duke Power Co.*").  (Some courts also consider whether judicial review would interrupt an

6  ongoing agency process.  But "no claim is made here that further administrative proceedings are

7  contemplated."  *Abbott*, 387 U.S. at 149.)

8          The facts relevant to a decision on the City's APA claim have all occurred.  "The issues before

9  [the court] are clear and not dependent upon contingent events."  *Adam Bros. Farming, Inc. v. Cty. of*

10  *Santa Barbara*, 604 F.3d 1142, 1149 (9th Cir. 2010).  DOJ has identified no future developments that

11  might aid the Court in the resolution of this question.  Indeed neither party anticipates taking any

12  discovery—while drafting a case management statement, counsel for both sides indicated that we

13  expect the case to be resolved on purely legal cross-motions for summary judgment.

14          The Ninth Circuit has expressly resolved this question: "no additional factual development is

15  necessary after a procedural injury has occurred."  *Cottonwood Envtl. Law Ctr. v. U.S. Forest Serv.*,

16  789 F.3d 1075, 1084 (9th Cir. 2015).  A party that suffers a procedural injury "may complain of that

17  failure at the time the failure takes place, for the claim can never get riper."  *Id.  Accord Citizens for*

18  *Better Forestry v. U.S. Dep't of Agric.*, 341 F.3d 961, 976–78 (9th Cir. 2003).

19          DOJ's fitness argument amounts to a contention that the City's harms are dependent upon

20  contingent events.  *See* MTD at 23.  That misconstrues the standard.  The "fitness" prong is about

21  whether further factual development would clarify "the legal issues presented" (*Duke Power Co.*, 438

22  U.S. at 82; *cf.* MTD 22), not whether those developments would increase the harm to plaintiff.  The

23  Department's citations to case law (MTD 22-24) are distinguishable on this basis.  In *Colwell v. Dep't*

24  *of Health & Human Servs.*, 558 F.3d 1112 (9th Cir. 2009), the Court concluded that more facts were

25  needed to determine if the government intended to be bound by a particular document.  *Id.* at 1128.  In

26  *Underwood v. Mackay*, 614 Fed.Appx. 871 (9th Cir. 2015), the plaintiffs' failure to apply for licenses

27  made it impossible to determine whether a specific provision would have "prevent[ed] the precise

28

harm that Plaintiffs fear[.]"  *Id.* at 872.  And in *Desert Water Agency v. Dep't of the Interior*, 849 F.3d 1250 (9th Cir. 2017), the Ninth Circuit did not affirm the district court's prudential ripeness analysis, but based its decision solely on Article III standing.  *Id.* at 1258.

Whereas here the Court has all the facts it needs to resolve the City's claim.  The City's reliance interest in the rescinded documents, its proprietary interest in compliance with the APA, and the procedural injury it has suffered, are all fully developed.  The Department has not provided the rationale behind rescission that the law requires, and it has opposed this lawsuit rather than complying with the APA.  Without relief from the Court, the City cannot discern the policy shifts indicated by rescission or formulate any potential challenges to those policies.  The City seeks a declaration that the Department's conduct is arbitrary and capricious *per se*; that issue is "purely legal, and will not be clarified by further factual development."  *Susan B. Anthony,* 573 U.S. at 2347, *quoting Thomas v. Union Carbide Agricultural Products Co.*, 473 U.S. 568, 581 (1985).  *See also Cement Kiln Recycling Coal. v. E.P.A.*, 493 F.3d 207, 215 (D.C. Cir. 2007) ("It is well-established that [c]laims that an agency's action is arbitrary and capricious or contrary to law present purely legal issues.") (quotation marks and citation omitted).

### 2.   The "Hardship" Inquiry Does Not Tip the Balance.

Despite DOJ's emphasis on the "hardship" prong of prudential ripeness, MTD 22-23, courts generally consider hardship only after a decision against plaintiffs on the "fitness" prong.  Courts use "hardship" to determine whether a case should be heard, even though further factual development would clarify the legal issues presented.  *See, e.g.*, *Colwell,* 558 F.3d at 1129 (showing of hardship insufficient to outweigh lack of fitness for review).  As of 2010, Judge Karlton in the Eastern District observed that "no binding authority has concluded that an issue was fit for review, that the plaintiff had demonstrated injury sufficient to convey standing, but that the lack of further hardship demonstrated that the issue was unripe."  *Pub. Lands for the People, Inc. v. U.S. Dep't of Agric.*, 733 F. Supp. 2d 1172, 1190 (E.D. Cal. 2010) ("*Pub. Lands*").  Nor does DOJ cite any case reaching that conclusion.

Here, because the issues are fit for judicial decision and "there are no significant agency or judicial interests militating in favor of delay," a lack of hardship "cannot tip the balance against

judicial review." *Energy Future Coal. v. E.P.A.*, 793 F.3d 141, 146 (D.C. Cir. 2015).  *Accord Louisiana Forestry Ass'n Inc. v. Sec'y U.S. Dep't of Labor*, 745 F.3d 653, 667 n.10 (3rd Cir. 2014) ("[B]ecause we discern no institutional interest in delay, and none is otherwise offered, we need not consider hardship to the parties."); *Harrell v. The Fla. Bar*, 608 F.3d 1241, 1259 (11th Cir. 2010) ("[W]here there are no institutional interests favoring postponement of review, a petitioner need not satisfy the hardship prong.").

In 2012, the Ninth Circuit reversed a dismissal for prudential ripeness, concluding the issues were fit for review without considering any hardship from delay.  The court reasoned:

> As Plaintiffs' claims are fit for review now, we do not reach the second factor of the prudential ripeness inquiry—hardship to the parties in delaying review.  Hardship serves as a counterbalance to any interest the judiciary has in delaying consideration of a case. . . . Because we can identify no interest in delaying review of Plaintiffs' claims, the hardship that would be imposed by any delay is not relevant.

*Oklevueha Native American Church of Hawaii, Inc. v. Holder*, 676 F.3d 829, 838–839 (9th Cir. 2012). Should the Court consider prudential ripeness, the Ninth Circuit's approach should control.

In any event, the injuries-in-fact alleged in the FAC more than establish the hardship the City will suffer in the absence of judicial review.  *See Owner-Operator Independent Drivers Ass'n, Inc. v. Federal Motor Carrier Safety Admin.*, 656 F.3d 580, 586 (7th Cir. 2011) ("[A]s *Abbott Laboratories* itself demonstrated, hardship need not take the form of an actual enforcement action; the threat of enforcement is sufficient because … a person made to live in the shadow of a law that she believes to be invalid should not be compelled to wait and see if a remedial action is coming.")  *See also Pub. Lands*, 733 F. Supp. 2d at 1190–91 ("[T]he ripeness doctrine imposes no independent 'hardship' requirement beyond the requirement of injury sufficient to convey Article III standing.")

**C.      Final Agency Actions are Presumptively Reviewable Under the APA.**

Finally, any consideration of ripeness should be guided by the APA's presumption of reviewability for final agency actions.  *Sackett v. E.P.A.*, 566 U.S. 120, 129, 130-131 (2012); *Abbott*, 387 U.S. at 140–41 (the APA "embodies the basic presumption of judicial review"; its "generous review provisions must be given a hospitable interpretation").  DOJ concedes that rescission of all but three of the documents in question constituted final agency action.  As such, "[a]ny doubts [the court]

might have [should be] resolved by the presumption of reviewability . . . [that] permeates the *Abbott Laboratories* ruling." *Continental Air Lines, Inc. v. C. A. B.*, 522 F.2d 107, 128 (D.C. Cir. 1974).

## III.   THE DEPARTMENT'S FINALITY ARGUMENTS AS TO THREE DOCUMENTS FAIL.

DOJ contends that rescission of three documents—the Baudry Letter, the Refugee Employment Flyer, and the Prior Joint Statement [hereafter, the "Initial Guidance Documents"]—is not sufficiently final to trigger judicial review under the APA.  MTD 24-29.

Agency action is final when it "mark[s] the consummation of the agency's decisionmaking process"—*i.e*, when the decision is not "tentative or interlocutory [in] nature" but one "by which rights or obligations have been determined, or from which legal consequences will flow."  *Bennett v. Spear* 520 U.S. 154, 178 (1997) ("*Bennett*") (quotations omitted).  The core question is "whether the agency has completed its decisionmaking process, and whether the result of that process is one that will directly affect the parties."  *Franklin v. Massachusetts*, 505 U.S. 788, 797 (1992).  Rescission of the Initial Guidance Documents is final under these standards.

### A.    Rescission of the Initial Guidance Documents Was Neither Tentative Nor Interlocutory.

DOJ alleges that the Initial Guidance Documents have been superseded, and thus their rescission was "merely tentative or interlocutory."  MTD 25.  That makes no sense.

The "subsequent guidance" documents DOJ cites cannot have superseded the Initial Guidance Documents, because they were all issued <u>before</u> rescission.  There is no logic to the Department's arguments that: the Baudry Letter rescinded in December 2017 was "replaced" by a document issued two years earlier (on December 14, 2015); the Refugee Employment Flyer was rescinded in July 2018 but "replaced in part" by a flyer issued May 26, 2016; the Department rescinded the Prior Joint Statement in December 2017, but "replaced" it on November 10, 2016.  *See* MTD 18-19, 20-21.

DOJ's sole case citation on this point (MTD 25) illustrates the absurdity.  In *DTCC Data Repository (U.S.) LLC v. United States Commodity Futures Trading Comm'n*, 25 F. Supp. 3d 9 (D. D.C. 2014), the court cited issuance of new guidance as evidence that a rescission was temporary or interlocutory—but of course that guidance was issued <u>after</u> rescission.  *Id.* at 15.

Here the rescissions are not tentative, but the culmination and express purpose of the agency process.  That process moved in a straight line, from an Executive Order to creation of a Regulatory Reform Task Force to a Request for Public Comment to the rescissions themselves in December 2017 and July 2018.  The expressly deregulatory nature of the process, as exemplified by the Executive Order's instruction to "identify regulatory actions for elimination," FAC 19, demonstrates that DOJ has no intention of undoing the improper rescissions or issuing actual replacement guidance.

DOJ also argues that the rescission of the three documents is not final agency action because the rescinded documents merely stated the agency's interpretation of the law, were not "binding," and/or had "no legal effect."  MTD 25.  That argument belies the DOJ's own admissions.  *Cf. Santa Clara*, 250 F. Supp. 3d at 522-524.

When rescinding the first set of documents, the Department and Attorney General Sessions cited concerns that the documents improperly imposed binding legal obligations without undergoing notice and comment rulemaking.  *See, e.g.*, FAC ¶ 31 (Sessions's explanation for the first bulk repeal focused on guidance that is "used to circumvent the regulatory process" or "improperly goes beyond what is provided for in statutes or regulation"); *id.* ¶¶ 26-27 (November 2017 memo declared that "guidance may not be used as a substitute for rulemaking and may not be used to impose new requirements on entities outside the Executive Branch.  Nor should guidance create binding standards by which the Department will determine compliance with existing regulatory or statutory requirements"; memo's principles served as criteria for recommending rescission).  In July 2018, Attorney General Sessions declared that he was rescinding 24 more documents as part of the continuing effort "to put an end to unnecessary or improper rulemaking."  FAC ¶ 8.

If DOJ rescinded the documents because it believed they "effectively bind private parties without undergoing the rulemaking process," (FAC ¶ 26) then surely it intended rescission to be final.  And while it remains uncertain which of the rescinded documents DOJ believes to have improperly imposed legal obligations, that lack of clarity is the crux of the City's APA claim.  Citing that uncertainty to shield DOJ from judicial review would create perverse incentives.

//

//

**B.     Rescinding the Initial Guidance Documents Has Practical Legal Consequences.**

The Department's decision to rescind the initial guidance documents has already altered legal rights and obligations, and created legal consequences.

Again, the guidance documents created safe harbors—*i.e.*, reasonable expectations that regulated entities like the City will not be subject to enforcement if they comply, and potential affirmative defenses if enforcement does occur.  For instance, if San Francisco completed internal audits of its I-9s in the manner outlined in the Baudry Letter and Refugee Employment Flyer, it could reasonably expect to be free from prosecution under the INA's anti-discrimination provisions.  FAC ¶ 80.  The Prior Joint Statement provided protection against uncertainty and fear of prosecution for violating the Fair Housing Act.  *Id.* ¶¶ 63-65.  Indeed, courts have relied on the Prior Joint Statement to determine regulated entities' compliance with federal law.  FAC ¶ 65.  *See Overlook Mut. Homes, Inc. v. Spencer*, 666 F. Supp. 2d 850, 856 (S.D. Oh. 2009); *Jeffrey O. v. City of Boca Raton*, 511 F. Supp. 2d 1339, 1354 n.10 & 1359 n.13 (S.D. Fla. 2007).  And several cities in California have been sued over regulations concerning group living arrangements for individuals with disabilities, making the safe harbor provided by the Prior Joint Statement all the more essential.  FAC ¶ 63.  Removal of these safe harbors is a significant legal consequence.  *See U.S. Army Corps of Engineers v. Hawkes Co.*, 136 S. Ct. 1807, 1814 (2016) ("denial of … safe harbor" is a legal consequence satisfying definition of "agency action" under 5 U.S.C. § 551(13)).

Ultimately, DOJ's finality arguments amount to an assertion that its decisions to issue or rescind guidance documents or statements of agency interpretation can never be challenged, because the documents are not final agency actions.  That is simply is not the law.  "That the issuance of a guideline or guidance may constitute final agency action has been settled in this circuit for many years…. [W]e [have] rejected the proposition that if an agency labels its action an 'informal' guideline it may thereby escape judicial review under the APA."  *Barrick Goldstrike Mines, Inc. v. Browner* 215 F.3d 45, 47–48 (D.C. Cir. 2000).  *See also Bennett*, 520 U.S. at 169 (Forestry Service opinion, while "theoretically serv[ing] an 'advisory function'" that did not bind the receiving agency, had legal effects because of a "powerful coercive effect on the action agency"); *Or. Nat. Desert Ass'n v. U.S. Forest Serv.*, 465 F.3d 977, 982 (9th Cir. 2006) (issuance of annual operating instructions to

permittees who graze livestock on national forest land was final agency action); *Int'l Longshoremen's & Warehousemen's Union v. Meese*, 891 F.2d 1374, 1378 (9th Cir. 1989) (INS advisory opinion and policy statement on Canadian operators of onboard cranes was final, reviewable).

**CONCLUSION**

For the foregoing reasons, DOJ's motion to dismiss should be denied.

Dated:  October 25, 2018

Respectfully Submitted,

DENNIS J. HERRERA
City Attorney
JESSE C. SMITH
RONALD P. FLYNN
YVONNE R. MERÉ
KENNETH M. WALCZAK
NATALIE M. ORR

*/s/ Kenneth Walczak*

By:   KENNETH M. WALCZAK

Attorneys for Plaintiff
CITY AND COUNTY OF SAN FRANCISCO

**APPENDIX A**

| | Rescinded Document | Related Statute | Harm to Proprietary Interest | FAC ¶¶ |
|---|---|---|---|---|
| 1 | *Olmstead* Guidance (FAC Exh. B) | ADA | Enforcement of laws; Economic harm; Risk of enforcement actions; Frustration of mission | 43, 48, 52, 57-60 |
| 2 | Joint Statement re: group living arrangements for persons with disabilities (FAC Exh. C) | ADA | Enforcement of laws; Risk of enforcement actions; Frustration of mission | 51, 56, 61-65 |
| 3 | Letter re: "protected individuals" (FAC Exh. D) | INA | Economic harm; Risk of enforcement actions | 71, 80-81 |
| 4 | Letter re: citizenship documentation audits (FAC Exh. E) | INA | Economic harm; Risk of enforcement actions | 71, 80-81 |
| 5 | "Refugees and Asylees Have the Right to Work" (FAC Exh. I) | INA | Economic harm; Risk of enforcement actions | 71, 80-81 |
| 6 | "Dear Colleague Letter" re: fines and fees (FAC Exh. F) | | Economic harm; Risk of enforcement actions; Frustration of mission | 83, 89, 93-95, 97 |
| 7 | Juvenile Fines and Fees Advisory (FAC Exh. G) | | Economic harm; Risk of enforcement actions; Frustration of mission | 83, 89, 93-95, 97 |
| 8 | Technical Assistance Manual re: DMC (FAC Exh. H) | | Frustration of mission | 101-103 |